The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Lorrie Dollar. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and the employment relationship existed between the parties on December 12, 1994.
2. Insurance Company of Pennsylvania was the carrier on the risk.
3. On December 12, 1994, the plaintiff sustained an admittedly compensable injury to his left knee, for which the parties entered into the Form 21 Agreement for Compensation.
4. The Form 21 reflected plaintiff's average weekly wage to be $300.00, yielding a compensation rate of $200.01.
5. The plaintiff received temporary total disability compensation from December 12, 1994 through May 10, 1995.
6. The issues for determination are:
 a. Whether the plaintiff is entitled to temporary total disability compensation after May 10, 1995 until July 24, 1995?;
 b. Is plaintiff entitled to N.C. GEN. STAT. § 97-31 or § 97-30 benefits?
c. What is plaintiff's average weekly wage?
 d. Was light duty work consistent with the doctor's restrictions offered to and refused by the plaintiff? and;
 e. Are defendants entitled to a credit for benefits paid after January 5, 1995?
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of the hearing, the plaintiff was a thirty-eight year old, eleventh grade educated male who had prior work experience in construction, farming, and tractor-trailer operation. He began working as a rotary straightener with defendant-employer in March of 1993.
2. On December 12, 1994, the plaintiff fell and fractured his left knee cap while at work.
3. In the twelve months prior to the injury the plaintiff earned $17,001.24. This yields an average weekly wage of $326.95, and a weekly compensation rate of $217.98.
4. As a result of the knee injury, the plaintiff was treated by Dr. Robert I. Saltzman, an orthopaedic surgeon, and was temporarily totally disabled from work from December 12, 1994 through January 12, 1995.
5. On January 11, 1995, Dr. Saltzman gave plaintiff a note that he could return to work if he could sit with his leg elevated at all times and could use his crutches. At that time, the plaintiff was in a hard cast which extended from his ankle to his crotch.
6. The plaintiff took the doctor's note to the defendant-employer on January 11, 1995, at which time the defendant-employer told him they had no work for defendant, and that he was fired.
7. The employer advised the plaintiff by letter dated January 6, 1995, that they had been advised by Dr. Saltzman that plaintiff could return to work and advised plaintiff to report to work by January 9, 1995 or he would be considered to have resigned.
8. The defendant-employer advised the Iredell Clerk of Court that plaintiff was terminated on January 4, 1995 in a separate letter.
9. An I.C. Form 28 reflected that the plaintiff was terminated on January 10, 1995 for failing to report for work.
10. The Commission authorized defendants to terminate plaintiff's benefits effective January 9, 1995, via an Administrative Decision and Order filed on May 5, 1995.
11. The plaintiff did not learn of his approval to return to work until Dr. Saltzman so advised him on January 11, 1995, even though the defendants had been engaged in ongoing discussions with the doctor's director of operations. The defendants even took it upon themselves to reschedule plaintiff's appointment from January 12, 1995 to January 11, 1995.
12. The plaintiff found full-time work on his own on July 24, 1995 at Wal-Mart, for which he was paid $6.00 per hour, or an average weekly wage of $240.00.
13. Plaintiff's hard cast was removed on February 1, 1995, and at that time Dr. Saltzman ordered plaintiff to undergo formal physical therapy, whirlpool, and not to bend the knee beyond 90 degrees.
14. Dr. Saltzman found plaintiff to be at maximum medical improvement on April 10, 1995, and could return to work without restrictions.
15. On September 18, 1995, Dr. Saltzman opined that plaintiff retained a ten percent permanent partial impairment to the left leg.
16. The plaintiff worked part-time with his father for ten to fifteen days, where he earned approximately $8.00 per hour for six hours per day of work prior to the Wal-Mart job. The plaintiff also earned $250.00 mowing ten lawns.
17. The defendants defended this claim on unreasonable grounds. The defendants interfered with medical decisions, including rescheduling doctor's appointments and obtaining a doctor's release prior to the doctor having even seen plaintiff on follow-up visit. Then, the defendants attempted ineffectively to terminate the plaintiff by sending letters to report to work prior to receiving a release from the treating doctor. In their zeal to cut-off plaintiff's benefits, the defendants acted improperly.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. The plaintiff did not unjustifiably refuse to return to work. Therefore, the Administrative Decision and Order was improvidently approved and must be set aside. N.C.G.S. § 97-32.
2. As a result of the compensable injury, the plaintiff is entitled to temporary total disability compensation at the rate of $217.98 per week for the period from December 12, 1994 through July 23, 1995, except for the ten days for which he worked for his father. N.C. GEN. STAT. § 97-29. The defendants are entitled to a credit for compensation paid at the rate of $200.01 per week for the period from December 12, 1994 to May 10, 1995.
3. As a result of the compensable injury, the plaintiff is entitled to elect to receive N.C. GEN. STAT. § 97-30 or -31 benefits as a result of the ten percent rating to the left leg. The more favorable remedy is to permit the plaintiff to receive N.C. GEN. STAT. § 97-30 benefits.
4. The plaintiff is entitled to have defendants pay for medical expenses incurred as a result of the compensable left knee injury. N.C. GEN. STAT. § 97-2 (19) and -25.
5. The plaintiff is entitled to have defendants pay his attorney's fees as a result of the unreasonable defense of this claim. N.C. GEN. STAT. § 97-88.1.
* * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. The Administrative Decision and Order is hereby set aside; and the defendants shall pay temporary total disability compensation to the plaintiff at the rate of $217.98 per week from December 12, 1994 through July 23, 1995, subject to a credit for compensation previously paid at the lesser rate. This has accrued and shall be paid in a lump sum.
2. The plaintiff is entitled to temporary partial disability compensation at the rate of two-thirds of the difference between $326.95 per week and the port-injury wage from July 24, 1995, and continuing, in accordance with the N.C. GEN. STAT. § 97-30. As much of said compensation as has accrued shall be paid to plaintiff in a lump sum.
3. A reasonable attorney's fee of $10,000.00 shall be paid directly by defendants as a result of their unreasonable actions in this case.
4. Defendants shall pay for medical expenses incurred as a result of the compensable injury.
5. Defendants shall pay the costs.
 S/ __________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ __________________ DIANNE C. SELLERS COMMISSIONER
S/ __________________ THOMAS J. BOLCH COMMISSIONER
CMV/cnp/rst